**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
:
FRANCISCA PEREZ, :
:
                        Plaintiff, :
: **MEMORANDUM AND ORDER**
                -against- : 07-CV-958 (DLI)
:
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
                   Defendant. :
------------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

       Plaintiff Francisca Perez filed an application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act") on December 18, 2002, alleging disability beginning on December 10, 2002, which was denied on April 24, 2003. Thereafter, plaintiff filed an untimely written request for hearing on August 22, 2003, but established good cause for the late filing. Plaintiff's application was denied initially and on reconsideration. Plaintiff testified before an Administrative Law Judge ("ALJ") at three hearings held on January 22, 2004, December 17, 2004, and September 23, 2005. Plaintiff claimed disability based on "asthma, allergies, hepatitis B and depression." (R. at 64, 73.) By a decision dated June 12, 2006, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. On September 7, 2006, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review.

       Plaintiff filed the instant action seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g).[1] The Commissioner now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. The Commissioner urges

---
[1] Plaintiff originally filed this action in the United States District Court for the Southern District of New York. On December 27, 2006, the case was transferred to this district based on improper venue by Order of the Hon. Kimba J. Wood, U.S. District Judge.

the court to affirm the ALJ's decision because it "is based upon the correct legal standards and is supported by substantial evidence." (Def.'s Mem. Supp. Mot. at 1.) Plaintiff cross-moved for judgment on the pleadings, seeking reversal of the Commissioner's decision, remand for further administrative proceedings, and additional relief as found proper by the court. (Pl's Mem. of Law in Supp. of Cross-Mot. at 3.)

For the reasons set forth more fully below, the Commissioner's motion is denied. Plaintiff's cross-motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Order.

## BACKGROUND

### A. Non-medical and Testimonial Evidence

Plaintiff was born on January 3, 1970 in the Dominican Republic, completed nine years of education, and can read and write in Spanish. (R. at 79, 563.) Before coming to the United States, plaintiff was employed by a cable company where she collected and recorded payments. (R. at 570.) She resides with her three children and is unemployed. (R. at 562, 569.) She has never worked in the United States. (R. at 571.) Plaintiff became a legal resident of the United States in 1992 and passed the citizenship exam in 1997. (R. at 64, 496.) However, she was never sworn in as a citizen. (R. at 496.) Plaintiff divorced her husband after he was deported for drug addiction. (R. at 565.)

Plaintiff performs minor housework, watches television, and sometimes takes her children to school. (R. at 90-91.) She goes to church once a week and shops for food or other items twice a month. (R. at 92-93.) Plaintiff is able to leave her home on her own, use public transportation, and go out twice a day. (R. at 92.) She can walk only two blocks before she has to stop and rest, but can continue after two minutes of rest. (R. at 95.) Plaintiff's social activities consist of daily phone conversations. (R. at 94.)

### B. Medical Evidence

#### 1. Treating Source Evidence

The treating sources record includes statements by Dr. David N. Costos-Mejia and by doctors at Beth Israel and Wyckoff Hospitals. Dr. Mejia has been plaintiff's treating doctor since 2000 and her prior doctor was Dr. Constantino Katellis. (R. at 85, 579.) Dr. Mejia stated that plaintiff could not work due to the following illnesses: urticaria, arthritis, chronic hepatitis B, asthma, angioedema with frequent episodes of hives, laryngo edema, and joint pain. (R. at 233, 241, 250, 261.) In addition, Dr Mejia stated that plaintiff could not work because "she has to take care of three children." (R. at 174, 241.) Dr. Mejia's claim that plaintiff suffers from of chronic hepatitis is contradicted by medical records from the Bayridge Endoscopy and Digestive Health Center which state, "[t]he patient is a hepatitis B carrier with no evidence of chronic hepatitis, in view of her normal liver function tests." (R. at 109.)

Plaintiff sought treatment at Beth Israel Medical Center on several occasions and was treated at Beth Israel throughout the relevant period. (R. at 291-347.) During this period, she complained primarily of joint pain and red and itchy skin. (R. at 302, 306, 308-10 336-37, 340-43.) Doctors at Beth Israel diagnosed her with urticaria and angioedema. (R. at 294, 297, 298, 302, 303, 306, 310, 315, 319, 330-31, 336-37, 340, 346-47.) The record states that her chronic urticaria was "controlled with Zyrtec and Atarax." (R. at 456.) Plaintiff also sought treatment for allergies at Wyckoff Hospital in 2003. (R. at 216-18.)

#### 2. Agency Consult Evidence

Dr. Myron Seidman, the Commissioner's consulting internist, performed a consultative medical examination of plaintiff on March 28, 2003. (R. at 128.) According to Dr. Seidman, plaintiff stated that she cannot work "because she has a several-year history of having allergy related problems causing swelling of the head, knees, arms and legs, back pain, pruritis, fevers

3

and chills." (*Id*.) Based on his examination of plaintiff, however, Dr. Seidman "could not confirm limitation lifting, carrying, standing, walking, sitting or pushing or pulling . . . controls." (R. at 133.)

### C. Psychiatric Evidence

#### 1. Treating Source Evidence

Plaintiff began visiting psychiatrist Victor Basbus in 2002. (R. at 213, 580 584.) Though plaintiff states that Dr. Basbus examined her "many" times, the extent of their relationship is not clear from the record. (R. at 497, 498.) On June 1, 2002, Dr. Basbus listed anxiety, depression, and sleeping disorder as plaintiff's chief complaints. (R. at 213.) Dr. Basbus noted that plaintiff was oriented but her mood was anxious and depressed, and therefore diagnosed her with recurrent depression, chronic anxiety, and insomnia. (*Id*.)

On April 5, 2003, Dr. Basbus completed a questionnaire of his treatment of plaintiff. (R. at 117-213.) He identified plaintiff's treating diagnosis as "depression recurrent" and noted that she has hepatitis B, chronic asthma, history of lower back pain, pain in her knees and feet, arthritis, headaches, and right hand pain. (R. at 117.) Dr. Basbus prescribed Ambien, Naprosen, Celexa, and Lexapro. (R. at 118.) Dr. Basbus also stated that plaintiff "is sick and needs medical and psychiatric treatment" and "is unable to work." (R. at 119-20.) He also opined that plaintiff had limited understanding and memory, limited concentration and persistence, limited social interaction and limited adaptation to work settings; however, she was not suicidal. (R. at 121-22.)

#### 2. Agency Consult Evidence

Dr. Richard King performed a consultative psychiatric examination of plaintiff on March 28, 2003. (R. at 126.) Dr. King stated that plaintiff "has been anxious and depressed for the last several years because of health problems," but claims that "medication is helpful." (R. at 126.)

4

He also stated that "[t]here is no history of hallucinations, delusions or suicida[l] behavior," and "[n]o history of alcohol or drug dependence." (*Id*.) In regard to the mental status of plaintiff, Dr. King stated that she was "cooperative," her "[s]peech was coherent and relevant, [with] no thought disorder," and her "[m]ood was euthymic, [and] not significantly depressed or anxious." In addition, Dr. King stated that "[t]here were no hallucinations, delusions, suicidal ideation, ideas of reference or paranoid trends elicited." (*Id*.) Dr. King also clarified that plaintiff did not pose a suicidal risk. (*Id*.) Dr. King stated that "the claimant has a satisfactory ability to understand, carry out and remember instructions, and a satisfactory ability to respond appropriately to supervision, co-workers and work pressures in a work setting." (*Id*.) Dr. King opined "claimant might benefit from psychiatric treatment." (R. at 127.)

**D. Medical Expert Testimony**

Dr. Richard Wagman, a Board Certified Internist and Medical Expert, testified as a medical expert at the December 17, 2004 hearing. (R. at 536-46.) He testified that plaintiff has a condition known as "angio or angioneurotic edema" which is a release of histamine that causes itchiness of the skin. (R. at 536-37.) Plaintiff's symptoms also include hives, joint pain, and swelling around the joints, as well as more serious symptoms of swelling in plaintiff's tongue and larynx, which requires emergency treatment or hospitalization. (R. at 537-42.) Dr. Wagman explained that plaintiff's condition is difficult to treat and antihistamines are "not always terribly [e]ffective." (R. at 537-38.) He stated that plaintiff's symptoms can be severe and would interfere with her ability to walk and stand if she experienced swelling in her knee and ankle joints. (R. at 539-42.) He also stated that plaintiff would have difficulty using her hands if she experienced swelling in her hands. (*Id*.) However, according to Dr. Wagman, the medical records available at that time were insufficient to determine the frequency of plaintiff's symptoms. (R. at 539-40.) Dr. Wagman also noted that determining the frequency of plaintiff's

5

flare-ups is important because plaintiff would not have "trouble doing normal things" between these periods. (R. at 545.) Thus, Dr. Wagman stated that acquiring additional records would help determine the frequency of plaintiff's flare-ups, but they might be inconclusive because plaintiff may not go to the hospital or to a doctor every time a flare-up occurred. (R. at 543.)

Dr. Wagman also testified at the September 23, 2005 hearing. (R. at 504-09.) During this hearing, Dr. Wagman reiterated that plaintiff has angioneurotic edema, but testified that this could be treated with antihistamines like Zyrtec and Atarax. (R. at 505-06.) The frequency of plaintiff's flare-ups, however, remained unanswered. Dr. Wagman believed it was not problematic. (R. at 506.) Dr. Wagman testified that plaintiff could sit for at least six hours, could lift ten pounds or more, and that because plaintiff had no physical limitations, she could perform light work. (R. at 506-07.) Light work is defined as being able to "sit, walk, stand for six hours and lift 20 pounds occasionally." (R. at 507.)

**E. Vocational Evidence**

Dr. Andrew Pasternak, a vocational expert, reviewed plaintiff's file and testified at the December 17, 2004 and the September 23, 2005 hearings. During the December 17, 2004 hearing, Dr. Pasternak testified that plaintiff had no vocational history because her sole employment in the Dominican Republic was "too remote." (R. at 546.) Like Dr. Wagman, Dr. Pasternak's testimony also raised the question of whether plaintiff's symptoms occurred frequently enough to interfere with work activity. (R. at 547.)

Notwithstanding this uncertainty, Dr. Pasternak addressed several hypothetical situations posed by the ALJ. (*Id.*) First, the ALJ asked Dr. Pasternak to consider whether a person in their early thirties with limited education, who "can communicate in English" could "find sedentary work that is not near gasses, fumes or environmental irritants," is "simple," "non-repetitive," and does not require decision making. (R. at 547-48.) Dr. Pasternak indicated that such a person

could find work including, "assembly jobs, . . . things in electronics," jobs in "optical goods," jobs "with clocks and watches," or as a "jewelry sorter," or an "order clerk." (R. at 548-49.) Dr. Pasternak testified that these positions are abundantly available in the local and national economies. (*Id*.) The ALJ also asked Dr. Pasternak to consider whether these jobs would be available to someone who would not be able to work for two or three days every three months due to a medical condition. (*Id*.) Dr. Pasternak testified that a person who missed work for two or three days every three months would be able to function in a job. (R. at 550.) It would be even less problematic if such person missed the same amount of days in six months. (*Id*.) Finally, the ALJ asked Dr. Pasternak to assume the truth of plaintiff's testimony that she is able to "walk for a half hour at a time . . .[,] sit for one hour at a time[, and] . . . that she has difficulty sleeping and she cries a lot because of her condition when it exacerbates." (*Id*.) Under these circumstances, Dr. Pasternak stated that plaintiff could not perform the previously cited jobs. (*Id*.) The ALJ's ultimate determination, however, rested on a medical finding of the frequency of plaintiff's symptoms. (*Id*.)

Dr. Pasternak clarified the uncertainty surrounding the frequency of plaintiff's symptoms during the September 23, 2005 hearing. Based on Dr. Wagman's testimony that "[plaintiff] could do up to at least light work and the episodes are not frequent" and "they were controlled with medication," Dr. Pasternak concluded that she could perform the jobs he had recommended during the December 17, 2004 hearing (electronic assembly, optical goods, watch and jewelry sorter, and order clerk). (R. at 510.) Dr. Pasternak also listed additional jobs that could be undertaken by plaintiff: photocopy machine operator and hand packer. (R. at 510-11.) Dr. Pasternak stated that workers are out on average two days a month, and that plaintiff would not have a problem if she would be absent one day a month. (R. at 512.) The ALJ noted that

7

"[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (R. at 21.)

## DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 1383(c)(3). A district court reviewing the final determination of the Commissioner must determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the

Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

### B. Disability Claims

In order to receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), 423(d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence that the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment" without reference to age, education, or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20

9

C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1.[2] *See* 20 C.F.R.§ 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

### C. ALJ's Decision

The ALJ applied the five-step analysis set forth in 20 C.F.R. § 416.920. She resolved step one in plaintiff's favor since she has not performed substantial gainful activity "for the period in question." (R. at 16.) At step two, the ALJ found that plaintiff's ailments are severe. (*Id*.) The ALJ resolved step three against plaintiff, finding that her impairments do not meet or medically equal one of the impairments in Appendix 1 of 20 C.F.R. § 404.1520(d). (*Id*.) With respect to plaintiff's RFC, the ALJ found that plaintiff remained capable of performing light work. (*Id*.) At step four, the ALJ found that the claimant is not able to perform her past work. (R. at 19.) As plaintiff only had limited work experience when she lived in the Dominican Republic, the ALJ found that "for the purpose of [their] decision, it will be found she has no relevant work." (*Id*.) Lastly, in regard to the fifth step, the ALJ found that "considering the

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

10

claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) In making these determinations, the ALJ reviewed documentary evidence provided by Dr. Mejia, Dr. Basbus, Dr. Seidman, and Dr. King, and heard testimony from medical and vocational experts.

### D. Application

The Commissioner now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. The Commissioner urges the court to affirm the ALJ's decision because it "is based upon the correct legal standards and is supported by substantial evidence." (Def.'s Mem. Supp. Mot. at 1.) Plaintiff cross-moves for judgment on the pleadings, seeking reversal of the Commissioner's decision, remand for further administrative proceedings, and additional relief as may be found proper by the court. (Pl's Mem. of Law in Supp. of Cross-Mot. at 3.) Plaintiff asserts that the ALJ's decision should be overturned because the ALJ: 1) wrongly discounted the opinions of plaintiff's treating doctors and failed to consider relevant medical evidence; 2) failed to develop the record to determine the frequency of plaintiff's symptoms; and 3) wrongly found plaintiff's testimony not credible.

#### 1. Evidence from Plaintiff's Treating Physicians and Development of the Record

Plaintiff asserts that the ALJ wrongly discounted the opinions of her treating physicians and failed to consider the evidence in the record that supported her claims. Plaintiff also argues that inconsistencies in the record regarding the frequency of plaintiff's symptoms triggered the ALJ's affirmative duty to develop the record to resolve the conflict. Defendant maintains that the ALJ properly considered statements made by plaintiff's treating physicians and correctly concluded that plaintiff maintained the ability to perform light work. Defendant also asserts that the ALJ's decision is supported by substantial evidence.

11

### a. Legal Background

A treating source's medical opinion regarding the nature and severity of an impairment is given controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (citing 20 C.F.R. § 404.1527(d)). When a treating source's opinion is not given controlling weight, the proper weight accorded depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)). Additionally, the ALJ must always "give good reasons" for the weight accorded to a treating source's medical opinion. *Id.* There are, however, certain decisions reserved to the Commissioner. Such decisions include the determination that a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). It does not, however, relieve the ALJ from explaining why they disagree with the conclusion of a claimant's treating physician. *Id.* at 134.

An ALJ may not reject the treating physician's conclusions based solely on inconsistency or lack of clear findings without first attempting to fill the gaps in the administrative record. *Rosa,* 168 F.3d at 79. "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,' even if the claimant is represented by counsel." *Pratts v. Chater,* 94 F.3d 34, 37

(2d Cir. 1996) (quoting *Echevarria v. Sec'y of HHS,* 685 F.2d 751, 755 (2d Cir. 1982)); *see also Butts v. Barhart,* 388 F.3d 377, 386 (2d Cir. 2004) ("It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.") (quoting *Seavey v. Barnhart,* 276 F.3d 1, 8 (1st Cir. 2001)), *amended on other grounds on rehearing,* 416 F.3d 101 (2d Cir. 2005).

### b. Application to the Present Case

In regard to plaintiff's treating physician, Dr. Mejia, the ALJ noted that he diagnosed plaintiff with asthma, arthralagia, urticaria, arthritis, and a history of chronic hepatitis B. (R. at 16.) The ALJ also noted that Dr. Mejia had treated the claimant on a regular basis since January 5, 1999. (R. at 17.) The ALJ stated that "[Dr. Mejia] did not supply a residual functional capacity assessment or any objective clinical findings." (*Id*.) The ALJ was silent as to what weight she gave to Dr. Mejia's opinions, if any. "The law is clear that 'the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician.'" *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 235 (W.D.N.Y. 2003) (quoting *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999)). As such, the court finds that the ALJ's failure to discuss the weight it accorded to Dr. Mejia's opinions warrants remand.

Even if Dr. Mejia's opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician. 20 C.F.R. § 1527(d)(2). Failure "to provide good reasons for apparently affording no weight to the opinion of plaintiff's treating physician constitute[s] legal error." *Schall v. Apfel*, 134 F.3d 496, 505 (2d. Cir. 1998). Proper weight is determined by "(1) the length and frequency of the treatment relationship; (2) the nature and extent of the relationship; (3) the amount of evidence the treating physician presents in support of her opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating physician's

13

specialization in the relevant area; and (6) other factors." *See* 20 C.F.R § 404.1527(d)(2)-(6); *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998).

Here, the nature of plaintiff's relationship with Dr. Mejia cannot be disregarded. The record establishes that Dr. Mejia has been plaintiff's doctor for almost a decade—a significant time period. (R. at 579.) Furthermore, the record indicates that Dr. Mejia treated plaintiff every two or three months. (R. at 227-40.) While the ALJ was aware that Dr. Mejia "treated the claimant on a regular basis since January 5, 1999," it does not appear that she accorded his opinions any weight and failed to articulate her reasons for doing so. (R. at 17.) In addition, the ALJ mischaracterized the record when stating that "no treating source other than Dr. Basbus stated that [plaintiff] could not work . . . ." (R. at 19.) The record reflects that Dr. Mejia repeatedly stated that plaintiff could not work due to her ailments. (R. 241, 250, 261.) Accordingly, the case is remanded for a statement of the reasons as to why Dr. Mejia's finding of disability was rejected.

In regard to Dr. Basbus, the ALJ noted that he was plaintiff's treating psychiatrist in 2002 and 2003, and that he had diagnosed plaintiff with an anxiety disorder and recurrent depression. (R. at 17.) The ALJ opined that Dr. Basbus "did not supply any objective clinical basis nor evidence of treatment of [plaintiff] other than a few prescriptions issued in 2002." (R. at 17-18.) Although Dr. Basbus alleged that plaintiff was unable to work, the ALJ gave little or no weight to the findings contained in his records. The ALJ gave good reasons for the weight given to these opinions, noting that Dr. Basbus's records were unsupported by evidence of regular treatment of plaintiff or clinical data.

The court agrees with the ALJ in that the administrative record contains insufficient information from Dr. Basbus regarding the nature of his relationship with plaintiff and clinical findings regarding plaintiff's condition. In addition, Dr. Basbus's reports are silent as to whether

the prescribed medications have any effect on plaintiff. Under these circumstances, the ALJ "should have inquired further with [the] treating psychiatrist[] . . . ." *Kilkenny v. Astrue*, No. 05-CV-6507 (KMK), 2009 WL 1321692, at *2 (S.D.N.Y. May 12, 2009) (citing *Rivera v. Astrue*, No. 06-CV-3326, (DLI) 2009 WL 705756, at *7 (E.D.N.Y. Mar. 16, 2009). The ALJ must "seek additional information from [the treating physician] *sua sponte*," *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998). The ALJ must also make "every reasonable effort" to help a claimant obtain the necessary medical reports. 20 C.F.R. § 404 .1512(d). "Every reasonable effort" includes issuing subpoenas as authorized by 42 U.S.C. § 405(d)." *Thomas v. Barnhart*, No. 01-CV-518 (GEL), 2002 WL 31433606, at *5 (S.D.N.Y. Oct. 30, 2002). While the record reflects that the ALJ properly served numerous subpoenas in this case, (R. at 61, 105, 288), the record does not indicate that a subpoena was served upon Dr. Basbus. The few reports from Dr. Basbus appear to have been received by plaintiff at the request of her counsel. (R. at 209.) In light of this gap in the record, the court cannot conclude that the ALJ's finding is supported by substantial evidence. *Rosa,* 168 F.3d at 82-83. Accordingly, further development of the record is required on remand.

In addition, inconsistent testimonial evidence provided by Dr. Wagman during plaintiff's second and third hearings requires clarification on remand. (R. at 538-40, 506.) During plaintiff's second hearing, Dr. Wagman testified as a medical expert regarding the frequency of plaintiff's symptoms generally, which include hives, joint pain, and swelling around the joints, as well as the frequency of more serious episodes of swelling in plaintiff's tongue and larynx, which require emergency treatment or hospitalization. (R. at 537-42.) At that time, Dr. Wagman stated that plaintiff's symptoms could be severe and would interfere with her ability to walk and stand if she experienced swelling in her knee and ankle joints. (R. at 539-42.) He also stated that plaintiff would have difficulty using her hands if she experienced swelling in her hands. (*Id*.)

15

Dr. Wagman explained that the record did not establish how often plaintiff experienced these symptoms, (R. at 539, 540, 541, 542), and that the question "of whether she could function at a job" could only be answered if the frequency of plaintiff's symptoms could be determined. (R. at 545.)

During plaintiff's third hearing, Dr. Wagman testified again regarding the frequency of plaintiff's symptoms. (R. at 504-08.) Rather than discussing how often plaintiff experienced all symptoms of her ailments, including itchiness, swelling, and joint pain, Dr. Wagman's testimony focused on the how often plaintiff's symptoms were severe enough to require hospitalization. (R. at 506, 507.) He did not identify how often plaintiff experienced symptoms of itchiness, swelling, and joint pain—symptoms which, based on his earlier testimony, would limit plaintiff's ability to walk, stand and use her hands. When asked by plaintiff's attorney regarding plaintiff's complaints of frequent pain associated with swelling, Dr. Wagman stated, "[s]ure, it can become a little painful, but the bottom line is, itching is the frequent problem." (R. at 508.)

Dr. Wagman submitted additional conflicting testimony when he initially stated that plaintiff's ailments are "a difficult thing to treat," that "the standard anti-histamines" are "not always terribly effective," that "treatment is at best fair," and that there is "no guarantee" that plaintiff will be relieved of "chronic itchiness," which "is a form of pain," by taking medication. (R. at 537-38, 542, 544.) During plaintiff's third hearing, Dr. Wagman testified that the plaintiff "does very well" on medication. (R. at 505-06.) The basis for Dr. Wagman's shift in opinion is not clear from the record.

This conflicted testimony served as the basis for both the vocational expert's opinion, as well as the ALJ final decision. As such, the court directs that ALJ to make diligent efforts to determine the frequency with which plaintiff experiences hives, joint pain, and swelling around the joints, as well as the frequency of more serious episodes of swelling in plaintiff's tongue and

16

larynx. The court further directs the ALJ to determine how effective plaintiff's medications are in relieving her symptoms.

### 2. Plaintiff's Credibility

Finally, plaintiff takes issue with the ALJ's determination that her testimony lacked credibility. According to plaintiff, "errors in the evaluation of treating source statements, and [the ALJ's] failure to consider all the evidence in the record" led to an incorrect assessment of her credibility. (Pl's. Mem. Supp. at 24.) Defendant asserts that the ALJ properly discredited plaintiff's testimony because it was inconsistent with the medical and testimonial evidence. (Gov't Mem. Supp. at 14.)

The Second Circuit "has long held that the subjective element of pain is an important factor to be considered in determining disability." *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). "While an ALJ 'has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment [regarding that pain, he must do so] in light of the medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Id.* (citations omitted). Further, "where a claimant's subjective testimony is rejected, the ALJ must do so explicitly and specifically" so that a reviewing court may conduct a plenary review of the record. *Kleiman v. Barnhart,* No. 03-CV-6035, 2005 WL 820261, at *12 (S.D.N.Y. Apr. 8, 2005) (citing *Williams v. Bowen,* 859 F.2d 255, 261 (2d Cir.1988). The ALJ must consider a claimant's testimony in light of the entire record. *Mieczkowski v. Astrue*, No. 07-CV-0141, 2008 WL 899344, at *13 n.5 (E.D.N.Y. Mar. 31, 2008). "[A] reviewing court must uphold the ALJ's decision to discount a plaintiff's subjective complaints if substantial evidence supports this determination." *Rodriguez v. Barnhart*, No. 05-CV-3382 (SAS), 2006 WL 988201, *5 (S.D.N.Y. Apr. 13, 2006) (citations omitted).

Here, the ALJ did not credit plaintiff's subjective complaints on the grounds that they were "not confirmed or supported by the acceptable medical documentation and contradicted by plaintiff's activities." (R. at 18.) More specifically, the ALJ explained that "[c]laimant maintains a household for three children; cleans, cooks, shops, does the laundry, walks one child to school, attends parent/teacher's meetings . . . handles bills and banking and attends church services on Sunday." (*Id.*) The ALJ noted that plaintiff appeared "alert, coherent and competent . . . and is concerned about her physical appearance." (*Id.*) Finally, the ALJ stated that plaintiff "keeps her medical appointments; [and] travels [Queens] to Manhattan to Beth Israel Hospital." (*Id.*) The court finds that the ALJ properly considered plaintiff's complaints in light of the record as a whole, including her own testimony regarding daily activities, and rejected it with sufficient specificity. *See Williams,* 859 F.2d at 260-61 (When an ALJ rejects witness testimony as not credible, it must set forth the basis for this finding "with sufficient specificity to permit intelligible plenary review of the record."). The ALJ, however, viewed plaintiff's testimony through the lens of an incomplete record. In light of the court's decision to remand this case for further fact finding, the ALJ is directed to reevaluate plaintiff's credibility after considering any new evidence made part of the record upon remand. *See Mieczkowski*, 2008 WL 899344, at *13 n.5; *McCarthy v. Astrue*, No. 07-CV-300, 2007 WL 4444976, at *9 (S.D.N.Y. Dec. 18, 2007).

## CONCLUSION

In light of the foregoing, the Commissioner's motion is denied. Plaintiff's cross-motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Order. The Commissioner shall take all steps necessary to prevent any delay in the processing of plaintiff's case and in conducting further proceedings before the ALJ. *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004).

SO ORDERED.

Dated: Brooklyn, New York
       August 14, 2009

/s/
DORA L. IRIZARRY
United States District Judge